**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| YourWebPro, Inc., and Gary Spies, | |
| Plaintiff, | Case No. |
| v. | |
| Zak Martin, Brian Fontana, and Contractor Web Zone, | |
| Defendants. | |

**COMPLAINT**

Plaintiffs, YourWebPro, Inc., and Gary Spies, ("Plaintiffs"), by and through their attorneys, Aronberg Goldgehn Davis & Garmisa, for their Complaint against Zak Martin, Brian Fontana, and Contractor Web Zone ("Defendants"), state as follows:

**ALLEGATIONS COMMON TO ALL COUNTS**

**The Parties**

1.      This case arises out of acts of willful, knowing, intentional, and brazen theft by Defendants.

2.      Plaintiff, Gary Spies is an individual.

3.      Spies is a resident of Schaumburg, IL.

4.      In approximately 1999, Spies was the sole owner and operator of a website development business by the name YourWebPro.

5.      The function of YourWebPro was to assist customers in the development of websites.

6.      The specialty of YourWebPro was building websites for construction companies and construction-related entities such as contractors.

7.      Spies operated and promoted the business through his website that was available at his URL www.yourwebpro.com.

8.      On February 6, 2008. Spies filed with the Illinois Secretary of State to form YOURWEBPRO, INC. (Exhibit 1).

9.      Spies was the President and Director of YOURWEBPRO, INC.

10.     Spies continued to operate the YourWebPro business under YOURWEBPRO, INC.

11.     YOURWEBPRO, INC. was involuntarily dissolved by the Illinois Secretary of State on June 14, 2013.

12.     However, Spies continued the YourWebPro business through and after the dissolution of YOURWEBPRO, INC.

13.     On November 19, 2016, Spies filed paperwork with the Illinois Secretary of State to form YOURWEBPRO LLC. (Exhibit 2).

14.     Spies used YOURWEBPRO LLC to continue the YourWebPro business that he had originally began and that he had operated through YOURWEBPRO, INC.

15.     Spies was the manager of YOURWEBPRO LLC.

16.     On November 11, 2018, YOURWEBPRO LLC was involuntarily dissolved.

17.     However, Spies continued the YourWebPro business through and after the dissolution of YOURWEBPRO LLC.

18.     On October 11, 2024 Spies filed paperwork with the Illinois Secretary of State to form a new YOURWEBPRO, Inc. ("New YourWebPro, Inc.").  (Exhibit 3).

19.     Spies is the President and Secretary of New YourWebPro, Inc.

20.     Spies used New YourWebPro, Inc. to operate the YourWebPro business in the same manner that he had since beginning the business in approximately 2004.

2

21. New YourWebPro, Inc. has a principal place of business at 34 Tamworth Place, Schaumburg IL 60194.

22. Spies, the YourWebPro business, YOURWEBPRO, INC., YOURWEBPRO, LLC, and New YourWebPro, Inc. are collectively referred to herein as "YourWebPro".

23. From 1999 until the present, Spies has been the sole owner of the YourWebPro business and its business entities.

24. Defendant Zak Martin is an individual.

25. On information and belief, Martin is a resident of Spokane, Washington.

26. Brian Fontana is an individual.

27. On information and belief, Fontana is a resident of Montgomery, Illinois.

28. On information and belief, Contractor Web Zone is a company owned and operated by one or more of Martin and Fontana.

29. On information and belief, Contractor Web Zone has an address of 522 W. RIVERSIDE AVE # 6550, Spokane, WA 99201.

30. On information and belief, Fontana and Martin conspired to and did create a website under the Contractor Web Zone name at the URL www.contractrowebzone.com.

31. Contractor Web Zone is the identical business to Spies's YourWebPro business.

32. That is because in a brazen act of intentional theft, Fontana and Martin impersonated Spies and hacked YourWebPro's protected accounts to steal YourWebPro's customers, assets, intellectual property, and funds by, among other things, taking possession of the yourwebpro.com URL, transferring customer communications to Contractor Web Zone, transferring customer direct banking deposits from YourWebPro's bank accounts to accounts

controlled by Fontana and Martin, and changing passwords on accounts owned by Spies to prevent Spies from accessing YourWebPro's accounts, information, and property.

33.  On information and belief, Contractor Web Zone is a sham company that is nothing more than the alter ego of one or both of Martin and Fontana.

### Jurisdiction and Venue

34.  This Court has jurisdiction over Plaintiff's claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338, and 1367. Plaintiff's claims arise under the Lanham Act (15 U.S.C. §§ 1051 *et seq.*), Illinois common law, Illinois Uniform Deceptive Trade Practices Act (815 ILCS 510 *et seq.*), and the federal Computer Fraud and Abuse Act (18 U.S.C. § 1030 *et seq.*). This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 as they arise from the same operative facts or are otherwise so related to its Lanham Act claims that they form part of the same case or controversy under Article III of the United States Constitution.

35.  Plaintiffs further bring this action under Title 35 of the United States Code, and under 28 U.S.C. §§ 2201 and 2202, to obtain a declaration of ownership of Plaintiffs' copyrighted materials.

36.  This Court has personal jurisdiction over Defendants because Defendants were employed by YourWebPro, worked for YourWebPro, and were paid by YourWebPro up until their acts of theft.

37.  Additionally, Defendants transact business relative to the claims made within the State of Illinois and within this District and because Defendants purposefully availed themselves of the benefits and privileges of conducting business activities within the State of Illinois and within this District.

38.     More particularly, Defendants utilize Spies' yourwebpro.com URL to redirect customers to Defendants' new Commercial Web Zone website, through which Defendants utilize the stolen property of YourWebPro to perpetuate their ongoing theft of YourWebPro's intellectual property and their infringing use of YourWebPro's property.

39.     This includes servicing and collecting money from YourWebPro customers as a result of Defendants' impersonation of Spies and hacking Spies's accounts to alter the bank accounts associated with YourWebPro's customers' direct deposits, and altering the passwords associated with YourWebPro accounts, including the GoDaddy account associated with the yourwebpro.com URL.

40.     Venue is proper in this Court at least pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

### Nature of the Case

*Plaintiffs' Development of Its YOURWEBPRO brand*

41.     From 1999 forward, Speis has been the sole owner of YourWebPro.

42.     The purpose and intent of the business was to facilitate the building and maintenance of websites for customers.

43.     YourWebPro specialized in the creation of websites for customers in the construction industry.

44.     Through YourWebPro, Spies began developing a suite of software that would effectively and efficiently assist in the creation and maintenance of customers' websites.

45.     Spies established an account with GoDaddy.com.

46.     To do so, he established a username and password.

47.     Spies used his GoDaddy.com account to purchase the web domain www.yourwebpro.com to use in the promotion the YourWebPro business.

48.     By at least as early as June 26, 2004, Spies's YourWebPro business was online, promoting the YourWebPro business through the www.youwebpro.com URL domain.

49.     The following is a screen capture from YourWebPro's early 2004 website (Exhibit 9):



50.     Through the website, YourWebPro began retaining customers for its website development services.

51.     YourWebPro expended considerable resources in developing its YourWebPro trademark and branding.

52.     Since its inception YourWebPro has continuously used its trademark YOURWEBPRO in the promotion and operation of its business throughout the entire United States and has generated good will in the YOURWEBPRO mark.

53.     Through its use and promotion of its YOURWEBPRO mark Spies and the YourWebPro business have built substantial and invaluable good will.

54.     By 2024, YourWebPro had also introduced a trademark logo:  "the Logo".

55.     Since its introduction, YourWebPro has continuously used its trademark Logo in the promotion and operation of its business throughout the entire United States and has generated good will in the Logo.

56.     The Logo was used on the website and in connection with website links, particularly Google search results to signal to customers that by clicking a link, they would be taken to a genuine YourWebPro website where they could gain access to and purchase genuine YourWebPro service.

57.     An example of the Logo used in connection with Google search results is shown below (Exhibit 7):



58.     Through its use and promotion of its Logo, Spies and the YourWebPro business have built substantial and invaluable good will in the Logo.

59.     YourWebPro also introduced a stylized trademark incorporating the Logo in the form of  (the "YOURWEBPRO stylized mark").

60.    Since its introduction YourWebPro has continuously used the YOURWEBPRO stylized mark in the promotion and operation of its business throughout the entire United States and has generated good will in the YOURWEBPRO stylized mark.

61.    Through its use and promotion of its YOURWEBPRO stylized mark Spies and the YourWebPro business have built substantial and invaluable good will.

62.    Individually and collectively the YOURWEBPRO mark, Logo, and YOURWEBPRO stylized mark, are referred to herein as "the YourWebPro Branding"

63.    Consumers rely on the YourWebPro Banding to identify genuine YourWebPro services, including Spies as the CEO and head of YourWebPro.

64.    Customer's retaining YourWebPro's services were all directed to go to the www.yourwebpro.com URL.

65.    From that URL, customers would access the YourWebPro website where they could create and access their account using a login.

66.    For example, the login button as of May 2024 appeared on the YourWebPro webpage in the following manner (Exhibit 5):



67.     Through the process of creating the account, customers would be required to agree to YourWebPro's terms of service before consummating their contract with YourWebPro through providing payment for YourWebPro's services.

68.     Thereafter, customers would be charged on a monthly basis for the services provided by YourWebPro.

69.     YourWebPro would automatically debit each customer's accounts each month, and those customer payments would be automatically deposited into YourWebPro's bank account with Chase Bank.

70.     Since its start, YourWebPro has been a very successful brand and business.

71.     Up until the events giving rise to this complaint, YourWebPro had a large number of customers and received significant income from its customers.

72.     YourWebPro generated well in excess of $5,000 in revenue on yearly basis.

73.     Spies, working as the owner and head of YourWebPro, hired personnel to assist him in the operation, promotion, and execution of YourWebPro.

74.     By 2024, YourWebPro employed about people (not including Spies) to operate and support the business.

75.     The YourWebPro team was identified on YourWebPro's website as follows (Exhibit 4):

## Meet Our Team

**Gary Alec Spies**
Founder & CEO

**Brian Fontana**
Vice President, Sales & Marketing

**Zak Martin**
Head of IT & Product Owner

**Carlos Orta**
Web Designer

**Chris**
SEO Specialist

**Forrest Mullenax**
Client Support Specialist

**Jonathan Jenkins**
Web Designer & Support Specialist

**Len S**
Client Support Specialist

**Margaret Griffin**
Sales & Human Resources

**Merritt La Foe**
Lead Web Designer

**Mike Booth**
Web Designer & Developer

76.    One of the earliest people that YourWebPro employed to assist in the operation of YourWebPro was Fontana.

77.    In approximately 2004, Fontana began his work for YourWebPro.

78.    Fontana was a primary point of contact for new customers.

79.    By 2020, Fontana worked his way up to Vice President of YourWebPro.

80.    As of the filing of this Complaint, Fontana continues to represent himself as a Vice President of YourWebPro on his LinkedIn page.

81.    Below is screen capture of Fontana's LinkedIn page (Exhibit 10):



82.     During his employment with YourWebPro, Fontana worked directly under Spies.

83.     At all relevant times, Spies had the right to control Fontana's work, including directing Fontana to engage with clients and attend events, such as tradeshows, on behalf of YourWebPro.

84.     For example, as part of his employment, YourWebPro directed Fontana to attend trade expositions and conferences such as the IRE show in early 2024.

85.     An image of Fontana's work for YourWebPro at the IRE show was posted by Fontana on his LinkedIn page:



86.     YourWebPro also employed software developers whom Spies directed in the development of YourWebPro's proprietary software tools that we were integral to its ability to provide its services to its customers.

87.     Initially, YourWebPro employed Jeff Granger to handle software development.

88.     When Granger left, Ken Davis was employed to handle software development.

89.     After Davis, Simon Willis was employed to handle software development.

90.     Then, in 2017, YourWebPro employed Zak Martin to continue the work of his forerunners and handle software development of YourWebPro.

91.     These individuals all worked on YourWebPro's proprietary software, which was referred to colloquially as "The Back End", or sometimes "Y2" or "ywpportal."

92.     From 2017 on, Martin worked for YourWebPro revising YourWebPro's suite of software tools (i.e. The Back End) under the direction of YourWebPro's owner, Spies.

93.     At all relevant times, Spies had the right to control YourWebPro's software development.

94.     Spies would assign tasks to Martin, and Martin would thereafter undertake and accomplish those assigned tasks.

95.     Of course, both Fontana and Martin were paid by YourWebPro as part of their employment.

96.     In consideration for his work, Martin was paid a weekly salary $2,000 by YourWebPro.

97.     Martin's payments were made by wire transfer from YourWebPro's account to Martin's account.

98.     In consideration for his work, Fontana was paid a weekly salary of $1,600 by YourWebPro.

99.     Fontana's payments were made by wire transfer from YourWebPro's account to Fontana's account.

100.     All of the work that Fontana and Martin did was by and on behalf of YourWebPro and for YourWebPro's benefit.

***Defendants' Wrongful Acts***

101.     By 2024, after over 20 years working as YourWebPro's owner and CEO, Spies was looking to exit the business.

102.    By that time, Spies had reached the age of 79 years old.

103.    Spies had also received tragic news of a terminal cancer diagnosis.

104.    In view of his advanced age and failing health, Spies began to undertake steps to sell his YourWebPro company.

105.    Spies's intent was to sell the company to his employees in exchange for an ongoing percentage of the company's profits.

106.    Fontana and Martin were aware of Spies's proposal and intent.

107.    Indeed, Fontana, Martin, and Spies had numerous communications regarding the sale for the company including the proposal from Spies that he would receive 15% of the ongoing quarterly profits of YourWebPro.

108.    Unbeknownst to Spies, Fontana and Martin conspired to steal the entire company for themselves.

109.    During the course of their employment with YourWebPro, and to facilitate their work, Spies had given both Martin and Fontana his username and password to the GoDaddy account through which Spies owned and controlled yourwebpro.com.

110.    During the course of their employment with YourWebPro, and to facilitate their work, Spies had given both Martin and Fontana his username and password for the YourWebPro Chase Orbital® virtual terminal that YourWebPro utilized to accept payments from customers of YourWebPro.

111.    However, on or about November 11, Martin and Fontana implemented their conspiracy and hijacked YourWebPro's URL, website, and customers.

112. Impersonating Spies, Defendants used Spies's login credentials to exceed all authority ever entrusted to Defendants in confidence by Spies to log into Spies's GoDaddy account and changing the ownership of the account from Spies to Defendants.

113. Defendants further changes the login credentials to complete their total theft of the YourWebPro business and all the documentation, business, and proprietary data software, that YourWebPro—and by extension Spies as the owner of YourWebPro—owned.

114. By changing the login credentials, Defendants electronically stole everything relating to the YourWebPro business from Spies and cut off Spies's ability to access his own account and his property.

115. Defendants' nefarious acts further prevented Spies from access to the Customers that YourWebPro had developed over the course of its 20-year business, because all customer data and information was inextricably linked to the now stolen YourWebPro.com website.

116. Defendants also used Spies login information to misappropriate the phone number he had owned for over 20 years, and as of approximately November 11, 2024, the began rerouting YourWebPro's phone number to Contractor Web Zone.

117. In addition, Defendants again impersonated Spies by using his login credentials to exceed all authority ever entrusted to Defendants in confidence by Spies to log into YourWebPro's Chase Orbital® account and change the direct deposit information associated with the account.

118. As a result of Defendant's actions, as of at least November 11, 2024, all of the YourWebPro's customer deposits—which contracted by YourWebPro and its Customers to be deposited into YourWebPro's account—are being diverted directly to one or more new bank accounts owned and controlled by Defendants.

119.   All revenues owed to YourWebPro by its Customers are no longer reaching YourWebPro but are instead being stolen by Defendants as a direct result of their infiltration and intentional manipulation of the accounts of YourWebPro and Spies.

120.   Having completely wrested control of YourWebPro from Spies, Defendants have now proceeded to willfully steal and use YourWebPro's invaluable trademarks and goodwill.

121.   For example, in a screen capture of Fontana's LinkedIn page on November 14, 2024, Fontana represents that Defendant's new company Contractor Web Zone was "formerly YourWebPro" (Exhibit 11):



122.   Defendants also control the promotion of the YourWebPro URL and business, including the YOURWEBPRO trademark and Logo, on Google (Exhibit 7):

16



123.    However, through their theft of the YourWebPro website credentials, Defendants now use the www.yourwebpro.com URL to redirect all customers to Defendants' website contractorwebzone.com.

124.    As of at least November 14, 2024, entering the URL www.yourwebpro.com into an internet browser would immediately redirect to www.contractorwebzone.com.

125.    Using the site wheregoes.com, it is possible to reveal the specific redirect that Defendants have put in place:



126.    Confusion in the marketplace as to what entity a person is transacting business with is damaging to Plaintiffs' YOURWEBPRO Branding and goodwill associated with it.

127.    Defendants know that their use of the YOURWEBPRO Branding is likely to cause confusion in the market with YourWebPro with respect to offering website development services causing damage to Plaintiff's brand and goodwill.

128.    Defendants, without any authorization or license from Plaintiff, have jointly and severally, knowingly and willfully used and continue to use the YOURWEBPRO Branding and the proprietary data, documentation and software owned by Plaintiffs in connection with the advertisement and conducting of offering website development services throughout the United States, including Illinois, and in Canada.

129.    On information and belief, Defendants have used YourWebPro's proprietary customer list to contact YourWebPro customers directly through email under the guise of operating as YourWebPro, falsely representing themselves as YourWebPro owners, to convince YourWebPro customers to breach their agreements with YourWebPro and do business with Contractor Web Zone.

130.    Defendants' unauthorized use of YOURWEBPRO Branding and the proprietary data, documentation and software owned by Plaintiffs in connection with the advertisement and conducting of website development services throughout the United States, including Illinois, and in Canada is likely to cause confusion and has actually caused confusion, mistake, and deception by and among consumers.

131.    Indeed, Defendants are falsely representing themselves as being "formerly YourWebPro" in a calculated and knowing deception directed to current customers of YourWebPro in an effort to mislead customers into continuing direct deposit payments (payments that had been being made to YourWebPro, but are now being diverted to Defendants account after Defendants hacked into YourWebPro's account and changed the customer deposit banking information) and to do business with Defendants under the false belief that Defendants are YourWebPro.

132.    Defendants' wrongful acts and/or willful infringements have caused and will continue to cause irreparable harm to Plaintiffs unless permanently enjoined, for which Plaintiff has no adequate remedy at law.

133.    Defendants are profiting and will continue to profit from their unlawful actions.

134.    Defendants' unlawful actions are causing and will continue to cause Plaintiffs monetary damages in an amount presently unknown, but to be determined at trial.

## COUNT I
## VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT
### (18 U.S.C. § 1030 *et seq.*)

135.    Plaintiffs hereby re-allege and incorporate by reference the allegations set forth in the preceding paragraphs.

136.    YourWebPro employed Fontana on a full-time basis for over 20 years.

137.    In that time, Fontana worked closely with YourWebPro's owner and CEO, Spies.

138.    Through his close working relationship with Spies, Fontana was able to gain Spies's trust and confidence in all matters relating to the operation of YourWebPro.

139.    YourWebPro's software was integral to YourWebPro's operation, Spies required a competent and trustworthy individual to oversee its operation and development so that Spies could be sure that YourWebPro could appropriately service YourWebPro's clients.

140.    In 2018, YourWebPro needed a new software developer to take over for its previous developer, Simon Willis, whom YourWebPro had employed to manage and develop YourWebPro's software.

141.    YourWebPro employed Martin on a full-time basis since 2018 to take over for Simon Willis.

142.    Martin worked as YourWebPro's primary software developer.

143.    Martin's job was to maintain YourWebPro's software and to add enhancements at the direction of YourWebPro and particularly Spies.

144.    To enable Martin to adequately fulfill the duties of his employment, Spies was required to place a great deal of trust in Martin.

145.    Over the course of his six years of employment, Martin was able to gain the trust of Spies.

146.    Spies provided Defendants with his username and password for the GoDaddy account that hosted the crown-jewel of the YourWebPro business, the yourwebpro.com URL and website.

147.    The entirety of the YourWebPro business was integrated into and linked with the yourwebpro.com website.

148.    All of YourWebPro's customers were linked to the business and managed through the yourwebpro.com website.

149.    All of YourWebPro's email traffic—including all of Spies email traffic—was directed through the yourwebpro.com domain.

150.    Fontana and Martin had access to all of it, as entrusted by Spies, for the purpose of working for YourWebPro and solely for the benefit of YourWebPro.

151.    Additionally, using the trust that Fontana and Martin had cultivated in Spies, Spies provided each with username and password access to the Chase Orbital® banking system used by YourWebPro to manage YourWebPro customer deposits.

152.    These customer deposits totaled tens of thousands of dollars per month.

153.    Unfortunately, Spies trust was misplaced.

154.    By 2024, Spies was over 79 years old and had been diagnosed with terminal cancer.

155.    It was at this time that Fontana and Martin conspired to steal the entirety of Spies' YourWebPro business from him.

156.    In an extraordinary breach of trust, Defendants conspired to and did use login credentials obtained in trust from Spies to access the protected GoDaddy Server hosting the YourWebPro URL and by extension the entire YourWebPro business.

157.    Without authorization to do so, and exceeding any authority that Plaintiffs had ever granted Martin or Fontana, Defendants accessed the GoDaddy Server with the intent to defraud Plaintiffs by converting and stealing the entire YourWebPro business.

158.    Upon accessing the GoDaddy Server, and in furtherance of their intended fraud, Defendants changed the login credentials for Spies's GoDaddy account and took control— entirely—of the yourwebpro.com domain and the YourWebPro business.

159.    Additionally, in another extraordinary breach of trust, Defendants conspired to and did use login credentials obtained in trust from Spies to access the protected Chase Bank computer system that stored YourWebPro's banking information for managing YourWebPro's customers' deposits.

160.    Without authorization to do so, and exceeding any authority that Plaintiffs had ever granted Martin or Fontana, Defendants accessed the Chase Bank computers with the intent to defraud Plaintiffs by converting and stealing the direct deposits of YourWebPro's customers.

161.    Upon accessing the Chase Bank computers, and in furtherance of their intended fraud, Defendants changed the bank account and routing data associated with the direct deposits of YourWebPro's customers to a new bank account controlled by Defendants.

162.    Defendants' violative acts of deception and fraud have resulted in tremendous damage to Plaintiffs.

163.    Defendants' violative acts have effectively prevented YourWebPro and Spies from engaging in the business that Spies started and has kept running continuously for the past 20 years.

164.    Through their violative acts, Defendants have gained immeasurable value in the form of the entirety of YourWebPro's business data, its proprietary software, its customers, and

the continual direct deposit income stream belonging to YourWebPro from its customers all of which far exceeds $5000 per year.

165.    Defendants' violative acts were undertaken with calculated, knowing, willful and malicious intent to steal the YourWebPro business from Spies at a time in his life where he is most vulnerable.

166.    The injuries sustained by Plaintiffs are directly and proximately caused by Defendants' violative acts and cannot be adequately satisfied by any monetary remedy nor any other remedy available at law such that Plaintiffs are entitled to damages, injunctive relief and any other equitable relief deemed appropriate including the disgorgement of all monies received by Defendants directly or indirectly relating to their violative acts.

**COUNT II**
**FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))**

167.    Plaintiffs hereby re-allege and incorporate by reference the allegations set forth in the preceding paragraphs.

168.    Defendants' promotion, marketing, offering for sale, website development services in association with and through the use of the YourWebPro Branding has created and is creating actual and a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiffs or the origin, sponsorship, or approval by Plaintiffs of Defendants' unauthorized services.

169.    By using the YourWebPro Branding in connection with the offering website development services, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of such services and any other product or services offered in connection therewith.

170. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the website development services offered and displayed to the public involves the use of Plaintiffs' trademarks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

171. Plaintiffs are entitled to actual damages and disgorgement of Defendants' ill-gotten gains, including three times the amount of such damages or any other amount as the court shall find to be just, according to the circumstances of the case.

172. Plaintiffs have no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiffs will continue to suffer irreparable harm to their reputation and the associated goodwill of the YourWebPro Branding.

**COUNT III**
**COMMON LAW TRADEMARK INFRINGEMENT**

173. Plaintiffs hereby re-allege and incorporate by reference the allegations set forth in the preceding paragraphs.

174. Plaintiffs have been using the mark YourWebPro on its website and in conjunction with offering website development services since at least as early as the year 2004.

175. Plaintiffs have been using the Logo and YourWebPro stylized mark on their website and in conjunction with offering website development services since at least as early as early 2024.

176. Plaintiffs offers their website development services in conjunction with the YourWebPro branding throughout the United States, including Illinois, and in Canada.

177. Plaintiffs established common law trademark rights in the YOURWEBPRO mark, the Logo, and the YourWebPro stylized mark.

178.    Plaintiffs established common law trademark rights in the YOURWEBPRO mark, the Logo, and the YourWebPro stylized mark prior to any use of any of the YourWebPro branding by Defendants on their own behalf.

179.    Defendants have utilized the YourWebPro branding on and/or in conjunction with website development services in violation of Plaintiffs' common law trademark rights.

180.    Customers of YourWebPro have paid for YourWebPro services but were actually confused in making their payments, believing them to be being made to and for YourWebPro services when in fact the funds were diverted to Defendants and appropriated by Defendants to provide Defendants infringing services.

181.    There has been actual confusion and there has been and is an ongoing likelihood of confusion as between Plaintiffs' YourWebPro Branding and Defendants' unauthorized use of the YourWebPro Branding with respect to offering website development services.

182.    Defendants' acts greatly and irreparably damage Plaintiffs, entitling Plaintiffs to an award of damages, including punitive damages, and will continue to damage Plaintiffs unless enjoined by the Court such that Plaintiffs are without an adequate remedy at law.

**COUNT IV**
**Cybersquatting**
**15 U.S.C. § 1125(d))**

183.    Plaintiffs hereby re-allege and incorporate by reference the allegations set forth in the preceding paragraphs.

184.    Plaintiffs own all rights in and to the YourWebPro trademark, which is strong and distinctive, and was strong and distinctive as of the date that Defendants registered the Infringing Domain, yourwebpro.com, in their own name by altering the login credentials belonging to Spies.

185.   Defendants registered and used the Infringing Domain yourwebpro.com, which is confusingly similar to Plaintiffs YourWebPro trademark.

186.   Defendants registered and used the Infringing Domain yourwebpro.com with an intent to profit from its confusing similarity to Plaintiffs' YourWbPro trademark.

187.   Defendants registered the Infringing Domain in their own name by stealing it from Plaintiffs and despite knowing that Defendants had no rights in any name or mark and were not themselves—outside of their employment by YourWebPro—known by any name that was referenced or reflected in the Infringing Domain.

188.   Defendants have made no bona fide, non-infringing, commercial use or fair non-commercial use of the Infringing Domain.

189.   Defendants intended to divert consumers looking for Plaintiffs' services online to Defendants' Website, constructionwebzone.com, by exploiting the confusing similarity of the Infringing Domain and the YourWebPro trademark mark for Defendants' commercial gain.

190.   Defendants have maintained the ownership information corresponding to the Infringing Domain secret by registering the Infringing Domain by proxy, with the ill-intent of benefiting from the Infringing Domain and during which time Defendants were reaping the benefits of the Infringing Domain at Plaintiffs' expense;

191.   Defendants, upon registering the Infringing Domain in their own name, re-routed the Infringing Domain to their own website, www.constructionzone.com, to direct consumers looking for Plaintiffs online to Defendants own business, and by usurpation of Plaintiffs' website prevented Plaintiffs from being able to contact or service their customers, all in an effort to intercept Plaintiffs actual and potential customers and make them Defendants' own.

192.    Defendants' conduct is directly and proximately causing substantial, immediate, and irreparable harm and injury to Plaintiffs, and to Plaintiffs' goodwill and reputation, and will continue to damage Plaintiffs unless enjoined by this court. Plaintiffs have no adequate remedy at law.

193.    Plaintiffs are entitled to injunctive relief, including, among other injunctive relief, the transfer of the Infringing Domain to Plaintiffs.

194.    Plaintiffs are further entitled to recover their damages and Defendants' profits, enhanced as the court deems appropriate and equitable, in amounts to be proven at trial.

195.    Plaintiff is further entitled to recover its attorneys' fees and costs.

## COUNT V
## VIOLATIONS OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
## (815 ILCS § 510, *et seq.*)

196.    Plaintiffs hereby re-allege and incorporate by reference the allegations set forth in the preceding paragraphs.

197.    Defendants have engaged in deceptive trade practices within the meaning of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510/1, et seq. by causing actual and/or likelihood of confusion or misunderstanding as to the source, origin, or sponsorship of the parties' respective products or services; causing actual and/or a likelihood of confusion or of misunderstanding as to the affiliation, connection, or association of Defendants or website development services with Plaintiffs' website development services and using deceptive representations or designations of origin in connection with Defendants' website development services.

198.    Defendants' deceptive trade practices include marketing website development service in connection with the YourWebPro branding, converting all YourWebPro customers to

Defendants' customers through fraudulently changing YourWebPro banking details to route YourWebPro's customers' deposits to Defendants, and representing that Contractor Web Zone was "formerly YourWebPro" all when Defendants had no right to do so.

199.    The unauthorized use by Defendants of the YourWebPro branding has caused, and is likely to continue to cause, substantial injury to the public and to Plaintiffs, and Plaintiffs have no adequate remedy at law for such injuries.

200.    Plaintiffs are entitled to injunctive relief under 815 ILCS § 510/3.

201.    Defendants knew about the YourWebPro branding, knew that the YourWebPro branding belonged exclusively to Plaintiffs, and knowingly, willfully, maliciously, and with reckless disregard for Plaintiffs rights engaged in deceptive trade practices entitling Plaintiff to an award of its costs and attorney's fees under 815 ILCS § 510/3.

### COUNT VI
### Conversion

202.    Plaintiffs hereby re-allege and incorporate by reference the allegations set forth in the preceding paragraphs.

203.    The YourWebPro URL, website, and all associated documentation, data, software, and payments made by YourWebPro Customers for YourWebPro Services is all the sole property of Plaintiffs.

204.    YourWebPro has the absolute and unconditional right to the immediate possession of the YourWebPro URL, website, and all associated documentation, data, software, and payments made by YourWebPro Customers for YourWebPro Services.

205.    The Defendants wrongfully and without authorization accessed YourWebPro's accounts and assumed control and dominion over the property by changing YourWebPro's

accounts and account information to accounts and account information (such as login credentials) to their own.

206.    Plaintiffs have made a demand for possession of the property, but Defendants maintain control and dominion over it.

207.    Plaintiff is entitled to the immediate repossession of its property including the YourWebPro.com URL, and all data, information, and software associated with it and with the operation and providing of YourWebPro's services.

## COUNT VII
### Declaratory Judgement of Ownership of Copyrighted Material
### (15 U.S.C. § 101 et seq.)

208.    Plaintiffs hereby re-allege and incorporate by reference the allegations set forth in the preceding paragraphs.

209.    At all relevant times Fontana and Martin were employed by Plaintiffs.

210.    Among the duties of Martin were the upkeep, maintenance, and enhancement of YourWebPro's proprietary software programs through which YourWebPro was able to and did provide its website development services to its clients.

211.    All work performed by Martin on YourWebPro's software was done at YourWebPro's direction.

212.    When YourWebPro needed additional tasks to be performed in the development of its software, it, often Spies, would assign and direct Martin to undertake the additional tasks.

213.    For Martin's work, he was paid a weekly salary by wire transfer from YourWebPro.

214.    The work performed by Martin was done in the course of the regular business of YourWebPro.

215. At all times, all software development that Martin performed for YourWebPro was done pursuant to his employment by YourWebPro and all such work constitutes work made for hire pursuant to 15 U.S.C. § 101.

216. By law, YourWebPro is the author of all of YourWebPro's software, including all software developed, revised, edited, or manipulated by Martin during the course of his employment by YourWebPro and all derivative works thereof.

217. By Law, YourWebPro is further the author of all data and information generated by YourWebPro and its employees in the course of their employment and all derivative works thereof.

218. As the Author of YourWebPro's proprietary software, data, and business information, the ownership of all copyright rights in and to such material was vested with Plaintiffs at the moment it was reduced to a tangible medium.

219. At no time have Plaintiffs licensed, assigned, or transferred the copyrighted works to any Defendant nor permitted the access or use of any of the copyrighted works by any Defendant outside of the scope of the employment of Martin and Fontana by YourWebPro.

220. Defendants unlawfully possess, use, and infringe upon YourWebPro's copyrighted works through Defendants' theft of such works as described herein.

221. Accordingly, Plaintiffs are entitled to a declaratory judgment that YourWebPro is the Author and owner of the copyrights in and to the YourWebPro software, data, and business information and are further entitled to the return of the works.

**COUNT VII**
**Tortious Interference with Contracts**

222.    Plaintiffs hereby re-allege and incorporate by reference the allegations set forth in the preceding paragraphs.

223.    Plaintiffs utilized YourWebPro.com to retain customers.

224.    Through YourWebPro.com, customers would engage Plaintiffs to perform website development services.

225.    As a part of that engagement, customers would agree to the contractual terms provided by Plaintiffs and agree to pay Plaintiffs for the services rendered by Plaintiffs.

226.    Defendants were intimately aware of the contracts that Plaintiffs had with its customers.

227.    Through the intentional and unjustified acts of Defendants described herein, Defendants caused all of Plaintiffs' customers to breach their agreements with YourWebPro and, rather than paying YourWebPro, pay Defendants for the work that YourWebPro had done.

228.    Additionally, the intentional and unjustified acts of Defendants described herein, Defendants transferred all of Plaintiffs' contracted customers to Defendants, causing further breach of the agreements between YourWebPro and its customers.

229.    As a result of Defendants tortious conduct and resultant breaches, Plaintiff has suffered damages.

31

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants jointly and severally as follows:

1.    That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

      a.    Using the YOURWEBPRO mark, the Logo, or the YOURWEBPRO stylized mark or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of website development services;

      b.    using the YOURWEBPRO mark, the Logo, or the YOURWEBPRO stylized mark or any reproduction, counterfeit, copy, or colorable imitation of the same, in any manner likely to cause others to believe that Defendants' website development services are approved by Plaintiff;

      c.    passing off, inducing, or enabling others to sell or pass off any website development services as those of Plaintiff;

      d.    committing any acts calculated to cause consumers to believe that Defendants' website development services are provided under the authorization, control or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

      e.    manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing

of, in any manner, advertising or other information pertaining to website development bearing the YOURWEBPRO mark, the Logo, or the YOURWEBPRO stylized mark or any reproductions, counterfeit copies or colorable imitations thereof;

    f.    disposing of, destroying, moving, secreting, relocating, and/or transferring any and all of Defendants' advertising or other information connected with the YOURWEBPRO mark, the Logo, or the YOURWEBPRO stylized mark, or the YourWebPro business without Court direction; and

    g.    assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in the above subparagraphs;

2.    Enter an Order, upon Plaintiffs request, that those with notice of the injunction, including without limitation, any internet hosting site, such as GoDaddy, Shopify, or WordPress (collectively, the "Third Party Providers") shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the providing of website development services using YOURWEBPRO mark, the Logo, or the YOURWEBPRO stylized mark;

3.    Enter an Order that Defendants and any and all persons controlled by or acting in concert with Defendants to be required to deliver up to Plaintiffs for destruction all goods, packages, and any other written or printed materials (including electronic files) that bear or depict YOURWEBPRO mark, the Logo, or the YOURWEBPRO stylized mark or any reproduction, counterfeit, copy, or colorable imitation of the same, or that are otherwise in violation of this Court's order issued pursuant hereto, on or in connection website development services;

4.    Order Defendants to pay for all economic damage or loss suffered by Plaintiffs pursuant to 18 U.S.C. §1030(g).

5.      Order that Defendants return to Plaintiffs all copyrighted material of Plaintiffs, including all software and computer code written, drafted, edited, or manipulated by any Defendant pursuant to Defendants' employment by YourWebPro together and along with all data and business information of YourWebPro.

6.      Order that YourWebPro is the rightful author of all copyrighted material, including all software and computer code written, drafted, edited, or manipulated by any Defendant pursuant to Defendants' employment by YourWebPro together and along with all data and business information of YourWebPro.

7.      Order Defendants to account for, and pay over to Plaintiffs, Defendants' profits, all damages sustained by Plaintiffs, and costs of this action pursuant to 15 U.S.C. § 1117(a);

8.      Increase the amount of damages and/or profits awarded to Plaintiffs in a sum equal to three times the profits or damages, as provided in 15 U.S.C. § 1117(b);

9.      Find that this is an exceptional case and award Plaintiffs the attorneys' fees, costs, and disbursements, with interest, expended in connection with any actions taken to investigate and confirm the claims made herein pursuant to 15 U.S.C. § 1117, or otherwise by law;

10.     Find that Defendants knowingly and willfully engaged in deceptive trade practices and awarding Plaintiff its costs and attorneys' fees under 815 ILCS § 510/3;

11.     Find that Defendants knowing and willfully engaged in trademark infringement and award to Plaintiff punitive damages, costs and attorneys' fees.

12.     Order Defendants to restore to Plaintiff all accounts accessed by Defendants including but not limited to Plaintiffs' GoDaddy Account.

13.     Order Defendants to restore to Plaintiffs the web domain yourwebpro.com together with all data and information hosted and associated with yourwebpro.com prior to Defendants' misappropriation of yourwebpro.com.

14.     Find that Construction Web Zone is the alter ego of either or both of Fontana and Martin.

15.     Order Defendants to pay for corrective advertising.

16.     Award Plaintiffs all pecuniary loss of the benefits of its contracts, actual harm to Plaintiffs' reputation, emotional distress, and consequential losses for the interference of Plaintiffs' contracts;

17.     Award Plaintiffs pre-judgment and post-judgment interest on each and every monetary award including on all punitive damages, costs and attorneys' fees; and

18.     Award any and all other relief that this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury of all issues so triable.

Dated: November 18, 2024                    Respectfully submitted,

/s/*Matthew De Preter*
Matthew De Preter

Nathan H. Lichtenstein
Matthew De Preter
ARONBERG GOLDGEHN DAVIS &
GARMISA
225 West Washington Street, Suite 2800
Chicago, IL 60606
312-755-3153
nlichtenstein@agdglaw.com
cdepreter@agdglaw.com

*Attorneys for Plaintiffs YourWebPro, Inc.
and Gary Spies*